Gary SMITH, Plaintiff–Appellant,

v.

TRANSWORLD SYSTEMS, INC.,
Defendant–Appellee.

No. 90–3727.

United States Court of Appeals,
Sixth Circuit.

Argued May 7, 1991.

Decided Jan. 14, 1992.

Edward A. Icove (argued and briefed), Cleveland, Ohio, for Gary M. Smith.

Patrick J. Perotti (argued and briefed), Dworken & Bernstein, Painesville, Ohio, Karin P. Beam, Anderson, Zeigler, Disharoon & Gary, Santa Rosa, Cal., for Transworld Systems, Inc.

Before KRUPANSKY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Plaintiff-appellant Gary M. Smith appeals the district court's summary judgment dismissal of his action challenging the debt collection practices of defendant-appellee Transworld Systems, Inc. For the following reasons, we affirm the district court's determinations.

I.

Plaintiff-appellant Gary M. Smith ("appellant" or "Smith") owed Ryder Truck Rental, Inc. ("Ryder") $446.21 for charges incurred in February 1988. In April, 1988, Ryder sent a statement to the appellant requesting payment of the debt. Smith requested documentation of this claim which was provided to him in October, 1988, along with Ryder's renewed demand for payment. Smith mailed his $446.21 check to Ryder on November 20, 1988; the appellant's bank records reveal that this check was charged against his account on November 23, 1988. On January 8, 1989, however, Ryder inadvertently referred Smith's account to the defendant-appellee, Transworld Systems, Inc. ("Transworld" or "appellee"), for collection. The referral form issued by Ryder to Transworld incorrectly stated the balance due as $456.21— Smith's November payment was not reflected on the referral form.

On January 13, 1989, Transworld sent a collection letter (resembling a telegram) to the appellant requesting payment of the

debt. Transworld used its Columbus, Ohio, office as its return address.[1] Though Transworld's letter "strongly recommended" that Smith contact Ryder directly, Smith, an attorney, sent a letter to Transworld's Columbus office demanding that Transworld "cease and desist from all further collection activities." The appellant's letter also discussed what Smith considered to be violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Smith's letter, dated January 22, 1989, was mailed to Transworld's Columbus office on January 24, 1989, by certified mail, return receipt requested. Though there is a dispute as to the date Transworld's Columbus office received the letter (the return receipt was signed but not dated), the parties stipulated that Transworld received Smith's letter "on or about January 26, 1989."

On January 27, 1989 (approximately one day after Transworld's Columbus office received Smith's letter), Transworld's Rohnert Park, California, office mailed Smith a second computer-generated collection letter. Transworld engaged in no further collection activities after January 27, 1989.

On May 26, 1989, Smith initiated this action in federal court alleging that Transworld had violated various federal and state law provisions enacted to protect consumers from unfair debt collection practices. Though Smith's complaint enumerated only two "Claims for Relief" (the first claim alleged violations under federal law; the second claim alleged violations under Ohio law), the district court separated Smith's convoluted federal claim into six distinct federal claims:

Count I charged that Transworld twice misrepresented the amount Smith owed, in violation of 15 U.S.C. § 1692e(2)(A);

Count II charged that Transworld twice demanded an amount in excess of the amount actually due, in violation of 15 U.S.C. § 1692e(2)(A);

Count III charged that Transworld failed to give Smith notice of his right to dis-

pute a portion of the debt, in violation of 15 U.S.C. § 1692g(a)(3);

Count IV charged that Transworld twice affiliated itself with the state of Ohio by representing itself as a "licensed agency," in violation of 15 U.S.C. § 1692e(1);

Count V charged that Transworld failed to cease and desist collection activities after being requested to do so, in violation of 15 U.S.C. § 1692g(b); and

Count VI charged that Transworld failed to respond to Smith's demand to verify the debt, in violation of 15 U.S.C. § 1692g(b).

*See* District Court's July 23, 1990 Memorandum Opinion at 5. Though Smith later moved to file an amended complaint to seek class certification pursuant to Fed.R.Civ.P. 23, the district court judge denied Smith's motion after finding "that plaintiff's proposed amended complaint is insufficient as a matter of law to satisfy the required prerequisites set out in Rule 23(a) necessary to maintain a class action." District Court's January 8, 1990 Order at 5.

On November 15, 1989, Smith filed a motion for partial summary judgment (the federal claims). On January 11, 1990, Transworld responded by filing its brief in opposition to Smith's summary judgment motion, and a cross-motion for partial summary judgment (the federal claims). In its response, Transworld raised (for the first time) a "bona fide error" defense: "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

Smith filed a memorandum opposing Transworld's motion for partial summary judgment on February 23, 1990, arguing that Transworld was precluded from maintaining a 15 U.S.C. § 1692k(c) defense because it had not plead the bona fide error

---

**1.** Transworld is a collection agency with offices across the United States; its headquarters are in Rohnert Park, California. Transworld is licensed as a collection agency in twenty states and two foreign countries, and is licensed to do business in Ohio as a foreign corporation—Ohio does not otherwise provide for licensing collection agencies.

defense in its answer to Smith's complaint. Smith nevertheless addressed the merits of Transworld's bona fide error defense.

On July 23, 1990, the district court judge: denied Smith's motion for partial summary judgment; granted Transworld's motion for partial summary judgment (thereby dismissing Smith's federal claims brought under the FDCPA); and, declined to exercise jurisdiction over Smith's pendent state claims (brought under the Ohio Consumer Sales Practices Act, Ohio Rev.Code § 1345.01 *et seq.*) which the judge dismissed without prejudice to Smith's right to re-file the claims in state court.

Smith thereafter filed a timely notice of appeal.

## II.

### *Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A district court's grant of summary judgment is reviewed *de novo*. *Pinney Dock & Transp. Co. v. Pennsylvania Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). In its review, this court must view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Though the moving party has the burden of conclusively showing that no genuine issue of material fact exists, *id.*, the nonmoving party, in the face of a summary judgment motion, may not rest on its pleadings but must instead come forward with some probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *60 Ivy St. Corp.*, 822 F.2d at 1435.

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). The dispute must be genuine and the facts must be such that if they were proven at trial a reasonable jury could return a verdict for the nonmoving party. *60 Ivy St. Corp.*, 822 F.2d at 1435. If the disputed evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### A.

Smith argues that Transworld's January 13, 1989 collection letter violated 15 U.S.C. § 1692g(a)(3) because it did not "clearly advise the unsophisticated consumer that he/she can dispute not just 'all portions' of the debt, but *any portion of the debt.*" Appellant's Brief at 5–6 (emphasis in original). At issue is the following preprinted language found on the bottom of Transworld's January 13, 1989 letter to Smith:

> Transworld Systems Inc. is a licensed collection agency and any information obtained from you will be used for the purpose of collecting this debt. All portions of this claim shall be assumed valid unless disputed within thirty days of receiving this notice. If disputed in writing, verification of the debt will be provided to you. If the original creditor is different from the above named creditor, the name and address of the original creditor will also be provided.

Joint Appendix at 49.

After correctly noting that a court "must determine whether the 'least sophisticated consumer' would be deceived by a collection agency's letters," District Court's July 23, 1990 Memorandum Opinion at 17; *see also Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172–75 (11th Cir.1985) (adopting "least sophisticated consumer" standard), the district court found that Transworld's statement satisfied 15 U.S.C. § 1692g(a)(3) by giving Smith notice that he could dispute the charges: "It is clear that defen-

dant's statement complies with and fulfills the requirements of 15 U.S.C. § 1692g. The Court finds that even the least sophisticated consumer would be apprised by this language that the debt could be disputed." District Court's July 23, 1990 Memorandum Opinion at 15.

15 U.S.C. § 1692g(a)(3) provides:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

*Id.*

The language found in Transworld's January 13, 1989 letter ("All portions of this claim shall be assumed valid unless disputed within thirty days of receiving this notice") clearly satisfies 15 U.S.C. § 1692g(a)(3), even under the "least sophisticated consumer" standard. Though Smith correctly notes that Transworld's wording does not specifically state that a portion of the debt may be contested, Transworld's letter adequately informs the reader that the debt must be disputed, if at all, within thirty days—it is implicit that the claim can be wholly, or partially, challenged. We therefore reject Smith's first assignment of error.

### B.

Smith next argues that Transworld twice violated 15 U.S.C. § 1692e(1) by representing that it was a "licensed collection agency" in the two collection letters it sent to the appellant. 15 U.S.C. § 1692e(1) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this

section—[t]he false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

*Id.*

■ Though Smith interprets the contested language in Transworld's letters ("Transworld Systems Inc. is a licensed collection agency and any information obtained from you will be used for the purpose of collecting this debt") as an attempt by Transworld to represent that it is affiliated with the state of Ohio and, therefore, enjoys governmental approval, Smith overlooks the fact that Transworld *is* a licensed collection agency in twenty states, two foreign countries, and is licensed to do business in Ohio as a foreign corporation.

After distinguishing the limited case law that Smith cited to support his position, the district court concluded:

The Court finds that defendant did not misrepresent its government status within the State of Ohio in order to make its request for payment more compelling or threatening to the least sophisticated consumer. The least sophisticated consumer would not have been misled by either the language contained in defendant's collection letters or the statement concerning its licensing status which appeared in small print at the bottom of its letters.

District Court's July 23, 1990 Memorandum Opinion at 20.

The district court's finding is clearly correct. In addition to the statement being true (Transworld *is* a licensed collection agency in numerous states), Transworld's statement clearly falls outside the scope of 15 U.S.C. § 1692e(1) which proscribes the "implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof." Though a very narrow reading of the statute may support Smith's position, we believe that the district court correctly found Smith's argument unpersua-

sive, even under the "least sophisticated consumer" standard. Smith's second assignment of error is therefore meritless.

### C.

■ Transworld failed to raise the bona fide error defense in its answer to Smith's complaint—Transworld first raised the defense in its motion for partial summary judgment. Smith therefore argues that Transworld may not rely on the bona fide error defense. The district court disagreed:

Although the defendant did not plead the affirmative defense of bona fide error in its Answer, the Court finds that plaintiff would not be prejudiced by permitting defendant to assert the bona fide error defense. Plaintiff responded to defendant's bona fide error defense claims after raising his objections to use of the defense. Plaintiff has had ample opportunity to file affidavits or deposition testimony to rebut defendant's use of the defense. Plaintiff cannot claim surprise or prejudice by the defendant's use of this defense. Therefore, the Court hereby permits defendant to assert the bona fide error defense to respond to plaintiff's claims.

District Court's July 23, 1990 Memorandum Opinion at 10.

Though the district court cited three cases and a treatise to support its holding, we believe that the Federal Rules of Civil Procedure offer the strongest support:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. *If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely*

*when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.* The court may grant a continuance to enable the objecting party to meet such evidence.

Fed.R.Civ.P. 15(b) (emphasis added).

Though Smith objected to Transworld's use of the bona fide error defense, the appellant failed to show that "the admission of such evidence would prejudice the party in maintaining the party's action ... upon the merits." *Id.* In fact, after arguing that Transworld had waived the bona fide error defense, Smith fully responded to the merits of Transworld's defense. Because Smith failed to demonstrate prejudice (pursuant to Fed.R.Civ.P. 15(b)), the district court properly determined that Transworld could rely on the bona fide error defense. *See Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989) ("We note that the Bureau did not plead a section 1692k(c) defense in its answer, or argue it on appeal. Upon remand, the district court should determine in its discretion whether to allow the Bureau to tender a section 1692k(c) defense."); *see also Rush v. Oppenheimer & Co.*, 779 F.2d 885, 889 (2d Cir.1985) ("[D]efendants' failure to raise the agreement to arbitrate as an affirmative defense when they did file their answer does not mandate a waiver of the right to arbitrate ... because of the absence of any important intervening steps."). Smith's assertions to the contrary are without merit.

### D.

Though Smith argues that Transworld violated 15 U.S.C. § 1692c(c) by failing to cease and desist collection activities after being requested to do so, the district court considered Transworld's bona fide error defense and rejected the appellant's claim. 15 U.S.C. § 1692c(c) provides:

If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the

debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt....

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

*Id.*

■ Though it is undisputed that Transworld's Columbus, Ohio, office received Smith's cease and desist letter before mailing its second collection letter from its California headquarters, Transworld argues that the second mailing resulted from a bona fide error. *See* 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."). Transworld supported its position with two employee affidavits (which explained why Transworld *inadvertently* mailed its second collection letter shortly after receiving Smith's cease and desist letter) and a five-page instruction manual Transworld provides each client which describes Transworld's collection procedures. Though given the opportunity to do so, Smith failed to submit any affidavits or deposition testimony to the district court to refute Transworld's proofs. Accordingly, the district court found "that the undisputed facts in defendant's affidavits conclusively prove that defendant did not intentionally pursue collection efforts after defendant was requested to cease collection efforts.... Although the second collection letter was sent after receipt of plaintiff's cease and desist letter, defendant's affidavits demonstrate that it was at most a clerical error for defendant to fail to retrieve the January 27, 1989 collection letter." District Court's July 23, 1990 Memorandum Opinion at 23.

Because Transworld's procedures are "reasonably adapted to avoid any such error," 15 U.S.C. § 1692k(c), the appellee's collection letter mailed shortly after receiving Smith's cease and desist letter constituted bona fide error.

### E.

Smith next argues that Transworld violated 15 U.S.C. § 1692g(b) by failing to verify the appellant's debt after receiving Smith's letter. 15 U.S.C. § 1692g(b) provides:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

*Id.*

■ After correctly noting that "[t]he purpose of § 1692g(b) is to require debt collecting agencies to cease collection activities if the amount has been disputed until the debt collector verifies the accuracy of the amount claimed," District Court's July 23, 1990 Memorandum Opinion at 16, the district court properly found that Transworld's "debt collection activities ceased after defendant sent the [second] collection letter." *Id.* Accordingly, the district court properly concluded that Transworld did not violate section 1692g(b):

The Court finds that defendant did follow the guidelines of 15 U.S.C. § 1692g(b) by ceasing and desisting from collection of the debt. Because defendant ceased collection activities, defendant was not obligated to send a separate validation of the debt to plaintiff. Although defendant mailed the second collection letter to plaintiff after receipt of plaintiff's cease and desist letter, the Court finds that it was at most a bona fide error for defendant not to respond to

plaintiff's request for verification prior to sending the second letter.... District Court's July 23, 1990 Memorandum Opinion at 16–17.

Because Transworld ceased collection activities after the receipt of Smith's cease and desist letter, *see supra* (Transworld's second collection letter resulted from a bona fide error), Transworld did not violate the provisions of 15 U.S.C. § 1692g(b).

### F.

Smith next argues that Transworld misrepresented the amount of the debt in violation of 15 U.S.C. § 1692e(2)(A) which provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: [t]he false representation of— the character, amount, or legal status of any debt.

*Id.*

■ At issue is the $10.00 discrepancy between the amount Smith actually owed Ryder ($446.21) and the amount Transworld sought to collect from Smith ($456.21). Though both parties agree that Ryder incorrectly listed the $456.21 figure when it referred the debt to Transworld, Smith nevertheless claims that Transworld violated 15 U.S.C. § 1692e(2)(A).

Smith argues that Transworld should have conducted an independent investigation of the Ryder debt referred to it for collection to determine the accuracy of the debt. The district court correctly determined, however, that "[t]he statute does not require an independent investigation of the debt referred for collection." District Court's July 23, 1990 Memorandum Opinion at 12. Instead, the FDCPA requires "the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Accordingly, because Transworld's "use of an incorrect collection amount was not intentional and resulted from a bona fide error," District Court's

July 23, 1990 Memorandum Opinion at 12, the district court correctly concluded:

The documents clearly reflect the fact that it was a clerical error on the part of defendant's client to refer plaintiff's account for collection, both as to the amount alleged as well as the fact that the debt had previously been paid. The defendant's referral form, completed and signed by Ryder, includes specific instructions to claim only amounts legally due and owing. Plaintiff has brought forth no facts to challenge the Ortiz affidavit which supports defendant's claim that it is entitled to the bona fide error defense.

*Id.* at 13.

Because the appellee employs procedures reasonably adapted to prevent errors in amounts referred for collection, Transworld reasonably relied on the accuracy of Ryder's $456.21 debt figure; the resulting mistake was bona fide error pursuant to 15 U.S.C. § 1692k(c). We therefore reject Smith's sixth assignment of error.

### G.

In his final assignment of error, Smith argues that the district court improperly denied his motion for leave to file an amended complaint to add a class action claim: "[Because] the substantive merits of a class claim should not be preliminarily inquired into even at the advanced stage of class certification, it [was] an error of law and/or an abuse of discretion to anticipate and decide the success of the substantive merits upon a mere request for leave to amend when a class claim has not yet even been pled or answered." Appellant's Brief at 16.

■ The appellant misconstrues the district court's rationale, however. The district court did not analyze the substantive merits of Smith's class action claim; rather, the district court denied Smith leave to amend his complaint because Smith failed to allege facts "from which the Court could at least reasonably infer that the mandatory prerequisites of Rule 23(a) have been met." District Court's January 8, 1990 Order at 4.

Though leave to amend "shall be freely given when justice so requires," Fed. R.Civ.P. 15(a), the district court found Smith's proposed amended complaint "insufficient as a matter of law to satisfy the required prerequisites set out in Rule 23(a) necessary to maintain a class action." District Court's January 8, 1990 Order at 5.

Federal Rule of Civil Procedure 23(a) ("Prerequisites to a Class Action") states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

The district court correctly determined that Smith offered little more than conclusory allegations to support his proposed amendment:

> Plaintiff's allegations that the requirements of Rule 23(a) are satisfied are founded on the assertion that defendant's forms are computer generated. According to plaintiff, this leads to the inference that: (1) "hundreds, if not thousands" of consumers are recipients of these forms, thus satisfying the numerosity requirement; (2) that the forms sent to the purported members of the class are all of the same "boilerplate" language, thus satisfying the requirement that there be common questions of law and fact among the class; (3) that since the purported class members must have received the same types of correspondence from the defendant and under the same circumstances as he did, his claims and defenses are typical of those of the class; and (4) "plaintiff will fairly and adequately protect the interests of

the class, and he has retained competent counsel to represent the class."

District Court's January 8, 1990 Order at 3–4.

Because Smith's proposed amendment failed to allege facts from which the district court could reasonably infer that the mandatory prerequisites of Fed.R.Civ.P. 23(a) had been met, the district court properly denied Smith's motion. We therefore reject Smith's final assignment of error.

### III.

For the aforementioned reasons, we AFFIRM the district court's January 8, 1990 Order, and July 23, 1990 Memorandum Opinion.

KRUPANSKY, Circuit Judge, concurring in part and dissenting in part.

The panel majority has misconceived the provisions of the Fair Debt Collection Practices Act (Act), 15 U.S.C. sections 1692–1692o, in particular, the narrow bona fide error defense and its application to the facts of the instant action.

Section 1692c of the Act prescribes discernable limits on the time and place of a collection agency's communication with a consumer in connection with the collection of a debt. 15 U.S.C. § 1692c(a) & (c). Section 1692c(c), which is entitled "Ceasing communication," provides that once the debtor has notified the collection agency, in writing, to desist from further communication, "the debt collector *shall* not communicate further with the consumer with respect to such debt." 15 U.S.C. § 1692c(c). If the consumer transmitted the cease and desist letter through the mail, a statutory presumption of notice attaches immediately upon the agency's receipt of the letter. 15 U.S.C. § 1692c(c). Thus, the law imposes an *absolute duty* on the collector to desist from further communication with the consumer on the date that the collector received the consumer's notice.[1] A debt col-

---

1. The statute permits the collector to further communicate with the consumer under three limited exceptions: to advise the consumer that all collection efforts have terminated; to notify the consumer that the collector may invoke a specific remedy; and to notify the consumer that the collector will invoke a specific remedy. 15 U.S.C. § 1692c(c)(1)–(3). Since Smith received a routine collection letter after the appel-

lector must recognize and incorporate this absolute duty into its routine debt collection practices and procedures. Thus, the collector must provide for a reasonable recipient response time to its collection letter, initial or otherwise, before mailing another collection letter.

Under the Act, a collector may avoid liability for a violation of section 1692c(c) through the bona fide error defense:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a *preponderance of evidence* that the violation was *not intentional and resulted from bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.*

15 U.S.C. § 1692k(c) (emphasis added).

As the statute indicates, the bona fide error defense is an affirmative defense. The burden is on the debt collector to prove, by a preponderance of the evidence, both a lack of intent to violate the Act and the implementation of procedures designed to avoid a violation of the Act. *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989). *See Baker v. G.C. Services Corp.*, 677 F.2d 775, 779 (9th Cir. 1982) (mistakes of law insufficient to insulate error). Moreover, the bona fide error defense applies only to clerical errors. *Baker*, 677 F.2d at 779. *See McGowan v. King*, 569 F.2d 845, 849–50 (5th Cir.1978) (bona fide error defense, as interpreted under the similar Truth in Lending Act, available only for clerical errors).

The facts of the instant case reflect that Transworld mailed its initial collection letter to Smith from California on January 13, 1989. That letter directed Smith to a Columbus, Ohio response address. Smith received the letter on January 17, 1989. He promptly mailed his cease and desist letter on January 24, 1989 from Dover, Ohio to the designated Columbus address supplied by Transworld. As stipulated by the parties, Transworld received the letter on or before January 25, 1989. Accordingly, pursuant to section 1692c(c), Transworld's notification to cease collection activity became

effective on the date it received the cease and desist letter, January 25, 1989, and it was required to immediately cease all collection activity *on that day.* Nonetheless, two days later, on January 27, 1989, Transworld mailed another letter to Smith, which he received on January 30, 1989.

Raymond Ortiz, the office manager of Transworld's Columbus, Ohio branch, stated in his affidavit that Transworld's procedure requires "that notice of the cease and desist demand be called in to the Transworld home office in California by the local Transworld office and that the demand be imputed to the computer and that no further collection effort be taken." According to Ortiz, this procedure was followed since after he received Smith's letter, "notice of the cease and desist was given to the home office in California." However, this notice was ineffective and, according to Ortiz, the error arose "either from a mis-direction of the stop order in the California office, or the 'crossing in the mail' of the stop order and the computer generated collection letter."

Pixie Wheeler, the vice-president of administration of Transworld Systems, Inc., confirmed by affidavit that a local office must notify the California office of a cease and desist demand by telephone immediately upon its receipt. In an effort to explain the "error," Wheeler first noted that Transworld is a national agency which mails thousands of collection letters each day. In the affidavit, she further explained Transworld's sophisticated, totally computerized collection program:

> First, the collection request is automatically computer generated and printed at the Transworld headquarters. The date placed by the computer on the letter is about 2 days in advance of the mailing. This is because of the time involved for the letter to clear the printing, bulk stuffing, zip sorting, and mailing process to send the letter.

> After the letter is printed, it is bulk folded and stuffed in an envelope with postage. The letter is then sent along with thousands of others in trays to the Shipping Department.

lee had received Smith's cease and desist notice,

these exceptions are inapplicable to this case.

Transworld does not zip sort its own letters because they are too numerous and has contracted this work to an outside zip sort company.

This company picks letters up from Transworld in the Shipping Department about twice a day and transports the trays or "flats" to its offices where the items are placed in zip code order and organized for mass bulk mailing. Once this entire process is completed, the zip sorter transports the flats of mail to the U.S. Post Office and they are mailed in bulk.

As explained above, this entire process takes approximately 1 1/2 to 2 full days. Because of the volume of letters involved each day, *there is no reasonable way to withdraw a letter which has already gone into the system.*

Aff. of Trixie Wheeler, ¶ ¶ 7–12 (emphasis added).

As is apparent from the affidavit, Transworld has designed a computerized system that automatically prints, bulk stuffs, zip sorts, and mails all collection letters. Once a debtor's name has been entered into the computer's memory bank, the computer program automatically generates the initial and all subsequent collection letters to those individuals whose names have been stored into the memory bank. Thus, once a name is entered into the computer memory bank, the collection cycle is activated and *a collection letter to a specific recipient cannot be selectively aborted even though a cease and desist notice has been received and timely forwarded by a local branch to the main office unless the designated recipient's name had been physically deleted from the computer memory bank before the computer's succeeding fourteen-day collection cycle is automatically computer initiated.*

However, the error in the instant action is not attributable to the fact that the name of the debtor remained in the computer program when the mailing sequence began, but rather to the fact that Ortiz, who received the cease and desist letter on January 25, either failed to immediately call the California office to stop the second letter, or, if he did call, the California office routed the stop notice to the wrong department. If he had called, or if the call had been effective, the debtor's name could have been physically withdrawn, on January 25, from the computerized mailing sequence from which there is, otherwise, "no reasonable way to withdraw a letter which has already gone into [it]." Thus, as the panel majority correctly notes, under the facts and circumstances of this case, the district court's determination that it was an unintentional, clerical error for Transworld to fail to retrieve the letter is not clearly erroneous.

Although the clerical error may have been unintentional, Transworld, nevertheless, had the *additional* burden of proving, by a preponderance of the evidence, that the second material element of section 1692k(c) had also been satisfied, namely, that its procedures were so designed and implemented as to avoid further communication with the debtor upon receipt of the desist notice, in order to successfully assert the bona fide error defense. However, Transworld's own admissions and the procedure as designed belie compliance with the requirements of the section 1692c(c) defense.[2]

The second collection letter in the instant case was mailed through the routine operation of Transworld's computerized collection system that was designed to automatically generate collection letters at fourteen-

---

**2.** The panel majority rationalizes that Transworld proved the second mailing was "inadvertent" through the depositions of two employees and its own five-page instruction manual provided to clients. However, the panel majority does not allude to nor does the record disclose the procedures implemented by Transworld to advert this type of error because those procedures are not, contrary to the panel majority's statement, embodied in the five-page manual or the depositions.

For example, the five-page instruction manual is nothing more than a compendium of instructions for Transworld's customers to follow seriatim in using Transworld's debt collection services. It incorporates no admonition or notice to its customers, much less to its employees, that addresses either directly or indirectly the implications of the Fair Debt Collection Act.

day intervals during the first thirty days after initial contact by mail.[3] The primary responsibility for printing, folding, and inserting collection letters into postpaid envelopes belonged to Transworld. Zip sorting of the collection letters was performed by a subcontractor. The zip sorter subcontractor bulk mailed the collection letters by depositing them with the United States post office. As is obvious from the foregoing, it is conceded that unless Transworld took affirmative, physical action to remove the name of a given debtor from the computer program, the computer would automatically regenerate the second and subsequent collection letters in the name of that debtor every twelfth day. Once the letter was regenerated, it was automatically beyond selective aborting.

Transworld's system itself has a physically insurmountable barrier to the absolute mandate of the statute to cease additional communication on the date that the desist notice is received. The system was so designed and implemented that its built-in lead time, which may be more than two days, renders it mechanically and physically impossible to withdraw a letter from the programmed mailing sequence unless the debtor's name has been withdrawn from the printing cycle *before* the subsequent mailing cycle has commenced. Thus, during the built-in lead time, Transworld was and is admittedly unable to comply with the absolute mandate of the statute and abort a collection letter from its computerized collection program even if there has been no error or delay in the transmittal of the cease and desist letter to the main office. Transworld's system cannot be characterized as a procedure reasonably designed to avoid violations of the Act. *See, e.g., Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 389 (D.Del.1991) (agency provided staff with seminars, manual, and memorandum regarding compliance with Act; card posted at each telephone station reminding debt collectors to disclose purpose of call; failure of collector to disclose purpose of call bona fide error); *Carrigan v. Central Adjustment Bureau, Inc.,* 494 F.Supp.

824, 825–27 (N.D.Ga.1980) (agency maintained no procedures for handling mail; collector's failure to see cease and desist letter and subsequent call to consumer not bona fide error).

Thus, Transworld has intentionally structured and implemented a system that defies compliance with the absolute duty mandated by section 1692c(c). Since Transworld has not and does not maintain procedures reasonably adopted to avoid mailing collection letters after having received a cease and desist letter, the bona fide error defense is not available to it and it is liable under section 1692c(c) for communicating with Smith after it had received his cease and desist letter. Thus, as a matter of law, summary judgment should not have been granted to Transworld on this issue, and, although I concur in the balance of the majority opinion, I respectfully dissent from the panel majority's legal conclusion that Transworld's clerical error in failing to retrieve the collection letter constituted a bona fide error under the statutory affirmative defense of section 1692k(c) of the Act.

---

**3.** The first thirty days is the critical period during which cease and desist notices would gener-

ally be received by Transworld.