**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

NOV 04 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ARTHUR ENGELEN, | No. 12-55039 |
| Plaintiff - Appellant, | D.C. No. 3:10-cv-01125-BEN-RBB |
| v. | |
| ERIN CAPITAL MANAGEMENT, LLC; et al., | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted October 10, 2013
Pasadena, California

Before: PREGERSON, WARDLAW, and TALLMAN, Circuit Judges.

Arthur Engelen appeals the district court's grant of defendants' motion for

summary judgment on the issue of Rosen & Loeb's liability for garnishing

Engelen's wages in violation of the Fair Debt Collection Practices Act ("FDCPA")

and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act").

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Because, as the result of a settlement, the district court dismissed all claims against Erin Capital Management and Eltman Eltman & Cooper, the only issue on appeal is whether the district court erred in concluding that the bona fide error defense shields Rosen & Loeb from liability under the FDCPA and the Rosenthal Act. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

The district court erred by concluding that Rosen & Loeb erroneously garnished Engelen's wages "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *See* 15 U.S.C. § 1692k(c). Rosen & Loeb garnished Engelen's wages after Engelen had already satisfied the debt because its bookkeeper failed to record Engelen's payment (and those of ten other debtors that day). Construing the evidence in the light most favorable to Engelen, Rosen & Loeb's procedures, which consisted of legal compliance training, a written policy describing how payment notifications were to be handled, and periodic spot-checking of the bookkeeper's work, were not, as a matter of law, "reasonable preventive procedures aimed at avoiding the errors." *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1006 (9th Cir. 2008) (internal quotation marks omitted); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994).

Besides the periodic spot-checking, none of Rosen & Loeb's procedures were aimed at preventing wrongful wage garnishments caused by the bookkeeper's

-2-

failure to record payment information. And even the periodic spot-checking did not consistently reduce the likelihood of recording errors. Spot-checking, by definition, examines only a small sample of a larger group for errors, and here even that practice was periodic. In other words, sometimes – perhaps once a week or once a month, we do not know – Lori Chertok inspected a small percentage of the bookkeeper's total entries for mistakes. This form of occasional spot-checking is not among the types of "processes that have mechanical or other such 'regularly orderly' steps to avoid mistakes . . . ." *Jerman v. Carlisle*, 559 U.S. 573, 587 (2010). The dissent emphasizes that, to Alan Rosen's knowledge, this is the only instance in twenty years where Rosen & Loeb's procedures failed. But because the record shows that ten other recording errors occurred on the same day as the error that affected Engelen and we are to construe all reasonable inferences in Engelen's favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), we cannot fairly infer from the record evidence that no other errors have occurred in the past twenty years.

Furthermore, Rosen & Loeb presented no evidence of any regular redundancies designed to catch human recording errors. Nor did Rosen & Loeb contact the debtor, Erin Capital, or the court before taking the serious steps of filing a Writ of Execution and garnishing Engelen's wages. The bona fide error

defense is a "narrow exception to strict liability under the FDCPA," so defendants

bear the burden of proof at summary judgment. *Clark v. Capital Credit &*

*Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006). The dissent's citation

to *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir. 1992), is inapposite.

There, the inquiry was limited to whether the debt collector's procedures were

"reasonably adapted" to prevent mailing a collection letter that incorrectly

calculated, by $10, the amount owed. *Id.* at 1031-32. In contrast, here we are

asked to evaluate whether Rosen & Loeb's entire set of procedures was

"reasonably adapted" to avoid erroneously garnishing Engelen's wages. Because

Rosen & Loeb failed to meet its burden of proof as to its entire set of procedures

under the bona fide error defense, it was not entitled to summary judgment. The

evidence presented is such that "a reasonable jury could return a verdict" for

Engelen. *Anderson*, 477 U.S. at 248.

Because negligence was pled against only Erin Capital, Engelen's

negligence claim is moot. *See Gator.com Corp. v. L.L. Bean, Inc.,* 398 F.3d 1125,

1132 (9th Cir. 2005).[1]

**REVERSED AND REMANDED.**

---

[1] We deny Engelen's request for judicial notice of all documents included in the district court's docket. Because the documents filed in the district court are already part of the record, *see* Fed. R. App. P. 10, the request is superfluous.

Engelen v. Erin Capital Management, LLC, et al., No. 12-55039

TALLMAN, Circuit Judge, dissenting:

A procedure designed to avoid a simple bookkeeping error, that avoids the error all but once in twenty years, is at least "reasonably adapted" to avoid that error. The majority disagrees. I dissent.

Here, Arthur Engelen sued Rosen & Loeb because Rosen garnished Engelen's wages to collect a debt that Engelen had already paid. The garnishment violated Engelen's rights under the federal Fair Debt Collection Practices Act and an analogous state law. Rosen, otherwise conceding liability, moved for summary judgment, invoking the statute's bona fide error defense.

That defense allows debt collectors like Rosen to avoid judgment if they can show that their violations were "not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Our case law divides that showing into three parts. The debt collector must show that the error (1) was unintentional, (2) bona fide, meaning made in good-faith, and (3) resulted notwithstanding "reasonably adapted" procedures to avoid it. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). The district court faithfully applied this case law, granted Rosen's motion, and should be affirmed.

1

Rosen's evidence was simple but convincing. Alan Rosen is an experienced San Diego lawyer whose law firm, Rosen & Loeb, collects commercial debts for creditors. It was hired to collect Engelen's debt by Erin Capital Management, an enterprise that buys uncollected debts in bulk. Rosen adopted a brief, written procedure to collect the debts now owed to Erin, including Engelen's. Rosen employed that procedure for recovering Erin's debts, but did not create it especially for Erin. Rosen had used the same procedure with other similar clients for years and repeatedly trained its employees on it. Rosen's employees were also regularly trained, tested, and then retrained based on the test results on how to comply with debt collection laws generally.

Rosen's procedure worked like this: first, Erin would receive a payment. Then, Erin would notify Rosen that the payment information was available for download on Erin's website. Rosen's office manager would download the payment information, save it to Rosen's computers, and print-off a copy. The office manager would then hand deliver the printed copy to Rosen's bookkeeper, who would then enter the payments into Rosen's own software. If a debtor's balance zeroed after the payment information was entered, then Rosen automatically stopped collection efforts. Periodically, the office manager would spot check the bookkeeper's work, making sure that payments were accurately

credited.

This procedure should have prevented Rosen's unlawful garnishment of Engelen's wages. Erin did, in fact, place notice on its website of Engelen's full payment of his debt; Rosen's office manager did, in fact, download that payment information, print it, and deliver it to the bookkeeper. But, for some unknown reason, the bookkeeper simply failed to record the payment. If she had, Engelen's account would have zeroed, and Rosen would not have initiated the garnishment. But for a single, lost print-out, we wouldn't be here.

And losing that print-out was an anomaly. Rosen himself declared and testified that the procedure had worked without fail until the firm received the Engelen debt and has worked without fail since–a period of more than twenty years with only a single mistake. The officer manager and bookkeeper both backed Rosen's claim with their own sworn declarations. And Engelen produced no contrary evidence.

This anomaly was a bona fide error. It was unintentional, it was in good faith, and it occurred notwithstanding procedures "reasonably adapted" to prevent it. My colleagues appear to agree that Rosen's error was unintentional and bona fide. We part company over whether Rosen's procedures were "reasonably adapted." I explain why I believe they were.

First, Rosen's procedures were reasonably adapted to avoid the error because, had they been used correctly, they would have avoided the error. Had the bookeeper entered Engelen's payment, his account would have zeroed and Rosen would have stopped all collection activities. The unlawful garnishment would thus never have happened.

Second, a procedure that only fails once in twenty years–i.e., once in likely thousands or tens of thousands of applications–is reasonably adapted to avoid the errors that would result from its failure. The majority tries to turn this single mistake into several by noting that "ten other recording errors occurred on the same day as the error that affected Engelen." The majority doesn't acknowledge that its eleven errors all have the same genesis. The print-out with Engelen's payment information also contained information for 10 other accounts.

In my book, a single, lost print-out is one error. But my analysis would be the same even under the majority's semantics–eleven errors in twenty years is still overpowering evidence of reasonably adapted procedures. By indicating that even this record isn't good enough, the majority sends a chilling message to debt collectors in our jurisdiction: reasonableness requires less than one error every twenty years; reasonable means perfect. This ignores the statutory defense Congress provided to this otherwise strict liability statute.

4

Third, our prior cases are all either off point or, to the extent relevant, support Rosen. In *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012), the error was intentional and there were no avoidance procedures in place. In *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011), the debt collector's procedures were inadequate because, unlike Rosen's, they would not have prevented the error at issue. And in both *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006), and *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994), the debt collectors offered no evidence of the existence of any avoidance procedures at all.

*Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008), faults the debt collector for relying on a single, "conclusory" declaration to prove-up its procedures. Rosen's evidence was simple, but far from conclusory. *Reichert* also approvingly cites two out-of-circuit cases that favor Rosen. *Id.* One approves of regular training like Rosen's. *Jenkins v. Heintz,* 124 F.3d 824, 834-35 (7th Cir. 1997). And the other makes the common-sense observation that a debt collector need not employ complicated procedures to address simple problems. *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008).

The most factually similar, circuit-level authority is *Smith v. Transworld*

5

*Systems, Inc.*, 953 F.2d 1025, 1031 (6th Cir. 1992). There, as here, the debt collector violated the law by taking a collection action after it received information that should have stayed its hand. *Id.* And there, as here, the debt collector made a simple showing–two employee declarations and a five-page procedures manual. *Id.* (Rosen's manual was shorter but he has an extra declaration.) That was enough for the court to conclude that the problem was "at most a clerical error" and to affirm summary judgment. We should do the same.

In reversing, the majority relies on three arguments. First, the disposition concludes that, other than the office manager's "periodic spot-checking, none of Rosen & Loeb's procedures was aimed at preventing wrongful wage garnishments caused by the bookkeeper's failure to record payment information." This is wrong. It's wrong because Rosen's other procedures–the procedure for downloading, printing, and inputting payment notifications and the monthly trainings on those procedures–are all meant to avoid unlawful wage garnishments by preventing the bookkeeper from failing to input payment information in the first place. The majority's failure to credit all of Rosen's procedures is unexplained and unfair.

Also unfair is the majority's assertion that the "the periodic spot-checking did not consistently reduce the likelihood of recording errors." How they reached that conclusion on a record of one error in twenty years is a mystery. Their cite to

6

*Jerman v. Carlisle*, 559 U.S. 573, 587 (2010), is meaningless. Of course the spot-checking, considered in isolation, is not itself a "mechanical" process with "orderly" steps. No one ever said it was. Rather, it is but one orderly step in the mechanical process Rosen follows: download, print-out, hand-off, input, spot-check.

The majority's next complaint is that Rosen "presented no evidence of any regular redundancies designed to catch human recording errors." But what is the office manager's spot-checking if not a redundancy? And why, without argument or authority, does the majority seem to insist that Rosen–and therefore all debt collectors–spot-check its spot-checking? The majority does not explain why the absence of a second redundancy, or perhaps a more regular one, makes Rosen's procedure unreasonable.

Finally, the majority finds that Rosen's procedures were unreasonable because they did not require, prior to seeking the writ of garnishment, contacting Erin or contacting the state court that issued the writ. This is just more spot-checking of spot-checking. Rosen did have a procedure for communicating with Erin, it just happened to break down this one time; but not because Erin forgot to tell Rosen that Engelen had paid the debt. As to the court, the record is silent, but at oral argument it was disputed whether checking with the court would have

7

helped.  That the court issued the writ on a satisfied debt like Engelen's suggests that consulting it may not have proved useful.  Moreover, the majority offers nothing–no authority or reason–to explain why Rosen's procedures are unreasonable because they did not require these steps.

Of course, on de novo review of summary judgment we draw all inferences from the evidence in the non-movant's favor, here Engelen's.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  But drawing those inferences doesn't permit us to ignore evidence or make it up.  We cannot ignore Rosen's uncontradicted evidence that its procedures never failed before Engelen.  We can infer, from that evidence, that Rosen is simply unaware of any possible prior failures because no one ever complained.  But we cannot invent prior failures to justify deeming Rosen's procedures unreasonable.

Thus, even when properly discounted, Rosen's evidence establishes that its procedures are reasonably adapted.  The law contains an exception to liability for bona fide mistakes.  I would affirm because no reasonable juror could find against Rosen on its bona fide error defense, even after drawing all reasonable inferences from the evidence in Engelen's favor. Reasonable just means reasonable, not perfect.  If this isn't a bona fide error, I don't know what would be.

I respectfully dissent.