**Ruth EDWARDS, et al., Plaintiffs,**

v.

**Jack E. McCORMICK, Defendant.**

No. C2–99–1343.

United States District Court,
S.D. Ohio,
Eastern Division.

Oct. 31, 2000.

Edward Alan Icove, Smith & Condeni Co., LPA, Cleveland, OH, Gary Michael Smith, Equal Justice Foundation, Dover, OH, for Plaintiffs.

Lawrence A. Sutter, Reminger & Reminger, Cleveland, OH, Thomas Day Hunter, Reminger & Reminger, Columbus, OH, for Defendant.

Stephen Douglas Jones, Margaret R. Carmany, Roetzel & Andress, Columbus, OH, for Hocking Valley Community Hosp.

## *OPINION AND ORDER DENYING CLASS CERTIFICATION*

MARBLEY, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Class Certification, filed

pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and Defendant's Motion in Opposition to Plaintiffs' Motion for Class Certification.[1]  Plaintiffs seek to certify a class defined as: all consumers who have received or will receive, at any time on or after December 13, 1997, from Defendant Jack E. McCormick, a communication to collect on debts owed for medical care.  For the following reasons, the Court **DENIES** Plaintiffs' Motion for Class Certification.

## I. Causes of Action Asserted

Plaintiffs bring this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), and Ohio's Consumer Sales Practices Act, OHIO REV.CODE § 1345.01 ("OCSPA").  Plaintiff Ruth Edwards is acting on her own behalf and on behalf of the estate of her deceased spouse, Thomas C. Edwards.  Plaintiff Edwards also seeks to represent a putative class of plaintiffs.

Plaintiff Edwards alleges that Mr. McCormick violated the FDCPA and the OCSPA: (1) by threatening to take action that could not legally be taken, or that was not intended to be taken, in connection with the collection of debts, in violation of 15 U.S.C. § 1692e(5); (2) by using false representations and deceptive means to attempt to collect a judgement, in violation of 15 U.S.C. § 1692e(10);  and (3) by taking judgment against Plaintiff Edwards for medical goods and services provided to Mr. Edwards since the judgment is not authorized by any agreement or permitted by law.  Plaintiff Edwards further alleges that Mr. McCormick acted as a "supplier" as defined by the OCSPA and knowingly committed unfair, deceptive, and unconscionable acts and/or practices in violation of the OCSPA.  OHIO REV.CODE § 1345.09.

Defendant McCormick asserts that the letter with the alleged misrepresentations,[2] was sent to the Edwards family due to human error, and that such illegal letters were sent to no additional persons.  Mr. McCormick interposes the bona fide error defense embodied in § 1692k(c) of the FDCPA with

---

**1.** Plaintiffs originally brought this action against Hocking Valley Community Hospital ("Hocking Valley") as well as Jack E. McCormick; Plaintiffs and Hocking Valley have represented to the

Court, however, that Plaintiffs have settled their dispute with Hocking Valley.

**2.** *See* discussion *infra* Parts II, III.

respect to Plaintiffs' individual claims. He also contends that the uniqueness of his mistake means that Plaintiffs' putative class is phantom.

## II. Factual Background

Prior to his death, Mr. Edwards received medical treatment from the physicians and health care personnel of Hocking Valley. On June 29, 1998, his outstanding balance was $7,058.88. Through Physicians Credit Bureau, Hocking Valley contracted with Mr. McCormick to collect this debt from Mr. Edwards. On August 27, 1998, Physicians Credit Bureau referred to Mr. McCormick an account in the amount of $4,069.81 owed by Mr. and Mrs. Edwards to Hocking Valley. Treatment rendered to Mrs. Edwards accounted for $997.42 of this unpaid bill.

Mr. McCormick consolidated these two accounts and, on October 19, 1998, initiated a legal action against Plaintiffs seeking $11,128.69 for medical services and goods supplied on credit by Hocking Valley to Mr. and Mrs. Edwards. On or about December 14, 1998, a judgement lien was filed in the Hocking County Court of Common Pleas in favor of Hocking Valley, creating a lien on all the Edwards's real property in the amount of $7,058.88 plus interest of ten percent per annum and legal costs of the action.

On or about December 16, 1998, Mr. McCormick sent a letter to the Edwards residence which threatened foreclosure and sale of the Edwards's home unless they arranged for payment of the judgment lien. Plaintiff Edwards did not make any payment arrangements in response to Defendant McCormick's letter regarding the judgment lien. Neither Mr. McCormick nor Hocking Valley took any action to foreclose on the Edwards's home prior to Hocking Valley's settling out of this case.

## III. Analysis

■ Before certifying a class, a court must engage in "rigorous analysis" of the plaintiff's ability to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The district court must carefully consider whether the requirements of Rule 23 are satisfied prior to certifying a class. *Shipp v. Memphis Area Office, Tenn. Dep't of Employment,* 581 F.2d 1167 (6th Cir.1978); *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir.1976). The party that moves for class certification has the burden of proof under Rule 23. *See Senter,* 532 F.2d at 520 finding that "[a] plaintiff must show that the action satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.".

■ The plaintiff "must satisfy all four of the prerequisites contained in Rule 23(a) and then demonstrate that the class he seeks to represent falls within one of the subcategories of Rule 23(b)." *Senter,* 532 F.2d at 522. The courts must not inquire, however, into the merits of the underlying claims of the class representative. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Court should accept as true the plaintiff's allegations in the complaint. *Shelter Realty Corp. v. Allied Maint. Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978); *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975); *Mayo v. Sears, Roebuck & Co.,* 148 F.R.D. 576, 579 (S.D.Ohio 1993). Resolution of the class certification may, however, require the court "to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364. Though "[i]n ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings," *Senter,* 532 F.2d at 523, plaintiffs may not rely on pure speculation to satisfy Rule 23's requirements. *Cwiak v. Flint Ink Corp.,* 186 F.R.D. 494, 497 (N.D.Ill.1999). Even after certification, a court may decertify a class if there is a subsequent showing that the grounds for granting certification no longer exist or never existed. *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364. In this case, the required rigorous analysis includes examination of: (1) the proposed definition of the class; (2) the satisfaction, or lack thereof, of the prerequisites of Rule 23(a); and, if necessary, (3) the satisfaction of the requirements of Rule 23(b)(2).

### A. Definition of the Class

■ Before delving into a Rule 23 analysis, the Court must first consider whether a

precisely defined class exists and whether the named plaintiffs are members of the proposed class. *See East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (discussing membership in a proposed class); *Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009 (W.D.Mich.1987) (citations omitted). While class definitions are obviously individualized to the given case, important elements of defining a class include: (1) specifying a particular group at a particular time frame and location who were harmed in a particular way; and (2) defining the class such that a court can ascertain its membership in some objective manner. *Crosby v. Social Sec. Admin.,* 796 F.2d 576, 580 (1st Cir.1986) (holding that a class could not be certified because the definition "ma[de] class members impossible to identify prior to individualized fact-finding and litigation" and thereby failing "to satisfy one of the basic requirements under Rule 23"). *Cf. Rodriguez,* 672 F.Supp. at 1012 (finding that the plaintiffs met the requirement for defining a class because the definition specified a group of agricultural laborers "during a specific time frame and at a specific location who were harmed in a specific way, ...") (citations omitted).

Here, Plaintiffs ask the Court to certify the class comprised of: all consumers who have received or will receive at any time on or after December 13, 1997, from Defendant McCormick, a communication to collect on debts owed for medical care. Plaintiffs' proposed class definition is obviously broad; the question, even assuming that the Court can objectively ascertain which people are members of the class and that Plaintiffs are members of the class, is whether the proffered definition is overly broad.

### 1. FDCPA Claims

The FDCPA was designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. The statute prohibits use of "any false, deceptive, or mis-

leading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In this case, Plaintiffs contend that Defendant McCormick has violated subsections (1), (5) and (10) of § 1692e. These subsections prohibit:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

.   .   .   .   .

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

.   .   .   .   .

■ (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(1), (5) & (10). Where a debt collector's allegedly deceptive communication is involved, "a court must determine whether the least sophisticated consumer would be deceived by the collection agency's [communications]...." *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1028 (6th Cir.1992) (internal quotations omitted).

Bona fide error is a defense to alleged violations of the FDCPA. 15 U.S.C. § 1692k(c). A debt collector cannot be held liable under the FDCPA "if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error." *Id.* In this case, Defendant McCormick claims a bona fide error occurred in sending Mrs. Edwards the letter at issue.

### 2. Definition of the Putative Class

Courts often have grappled with the problem of concisely defining a class. Common class certification issues include evaluating proposed classes that are ill-defined or too broad. The putative class in the matter *sub judice* is both.

In *Pagan v. Dubois,* 884 F.Supp. 25 (D.Mass.1995), Latino plaintiffs sought re-

dress for the alleged violations of their constitutional rights resulting from the lack of cultural programs for Latino prisoners, the limited number of Latinos on the prison's staff and the inadequate medical treatment for Latino prisoners who were HIV-positive. The Latino plaintiffs based their allegations on the fact that the prison staff was not able to communicate in Spanish. *Id.* at 26. The Court held that defining the class to include all the Latino inmates was overly broad because: (1) not all Latino prisoners only could communicate in Spanish and those who could speak English were not harmed; (2) the named plaintiffs did not claim that they could not write and speak English, and therefore they had an insufficient stake in the controversy; (3) it was not clear from the complaint that the named plaintiffs personally had been deprived of any constitutional rights; and (4) the term "Latino" was "far too general to be useful in formulating the specific judicial remedy sought" in the case. *Id.* at 28. Thus, the Court declined to certify the class. *Id.*

In *Caroline C. v. Johnson,* 174 F.R.D. 452 (D.Neb.1996) the class proposed by the plaintiffs included all female patients past (during the relevant times), present and future. *Id.* at 459–60. The Court recommended that the plaintiffs' proposed class definition be narrowed to redress the rape and sexual assault of female patients at the state-supported mental health center. *Id.* at 462. The Court held that women who were no longer patients and who were not raped or assaulted at the facility had not suffered and would not suffer an actual injury and, therefore, their claims did not present a justiciable controversy. *Id.* at 462. The court relied on the principle that " '[f]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them,' " and suggested that the class be redefined to include women who were assaulted or raped in the past and all women who were currently or would be in the future patients at the mental health facility. *Id.* at 462 (quoting *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971)).

Plaintiffs here have made no showing of any specific harm to the putative class members. They have not even asserted that all people who received or will receive, on or after December 13, 1997, communication from Defendant McCormick to collect on medical care debts have received or will receive such communication wrongfully, in error, or in violation of any state or federal law. Thus, the locus of any specific harm would seem to be within a subset of that group: those people who received communication that actually violated federal or state law. Unless the size of that subset can be reasonably determined or inferred, Plaintiffs' proposed definition is too vague for certification.

Deposition testimony shows that there may be ten or more types of form letters that Defendant McCormick sends out to collect various kinds of debt. It is unclear whether these letters can be categorized according to: (1) type of debt (consumer or business); (2) business of creditor (medical or otherwise); (3) type of notice (foreclosure pursuant to judgment lien, garnishments, etc.); or (4) other identifying factors. Defendant McCormick's secretary, Lolita Denton, testified that she is unfamiliar with the type of letter at issue in this case and has no knowledge of other letters like it on file used to collect either consumer or commercial debts. While Ms. Denton's testimony may damage Defendant McCormick's bona fide error defense claiming a clerical mix-up—if the letter were one of a kind, it is likely to have been intentionally created for the purpose used [3]—it does support the claim that the letter issued to the Edwards family was one of a kind in its use of a prohibited threat to foreclose on Plaintiffs' house.

Against this testimonial evidence presented by Defendant, Plaintiffs have offered nothing more than speculation that since Mr. McCormick "communicates with persons to collect debts owed for medical care by filing suit against approximately 100 to 120 persons each year," he must have sent other illegal letters. This supposition does not establish a

---

**3.** Defendant McCormick claims that a commercial debt letter was sent to the Edwards family by mistake.

reasonable basis for the Court to conclude that the Edwards letter represents more than an isolated incident. In addition to presenting obvious problems satisfying the numerosity requirement of Rule 23(a),[4] this shortcoming casts further doubt on the ability of Plaintiffs to define a class concisely or adequately.

■ Where named plaintiffs fail to define the class adequately, the court need not proceed to a full Rule 23 analysis. *See Metcalf v. Edelman*, 64 F.R.D. 407, 409–10 (N.D.Ill.1974). "A class must be capable of concise and exact definition." *Id.* at 409. If a court must come to numerous conclusions regarding class membership or adjudicate the underlying issues on behalf of each class member, then a proper class cannot be defined concisely. *See id.; see also Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 & 405 (E.D.Pa.1995) (denying class certification because the plaintiff's definition of the class would require a mini-hearing on the merits of each plaintiff and liability would be determined by facts specific to each plaintiff). Plaintiffs' failure to establish an adequately defined class alone is a basis on which this Court could deny certification. Moreover, an analysis under Rule 23 demonstrates that there is no basis on which certification would be proper, even if Plaintiffs had adequately and concisely defined their putative class.

## B. Rule 23(a) Requirements

■ Aside from evaluating the proposed definition of the class, this Court must consider whether the putative class can be certified pursuant to the Rule 23 prerequisites to maintaining a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23(a). Thus, there are four requirements that must be satisfied before a class is certified: (1) numerosity; (2) commonality; (3) typicality; and (4) fair and adequate representation. *See id.* Each of these prerequisites must be met before a class can be certified. *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.1996).

### 1. Numerosity

■ The element of numerosity requires that the class be "so numerous that joinder of all members is impracticable." FED.R. CIV. P. 23(a)(1). Determining the impracticability of joinder does not require adherence to a strict numerical formula. *General Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) (finding that "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."). In judging numerosity, the court may consider the diverse geographic distribution of members in the putative class, as well as their numbers. In general, "[c]ourts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993). While "[t]he exact number of class members need not be pleaded or proved, ... impracticality of joinder must be positively shown, and cannot be speculative." *Cwiak*, 186 F.R.D. at 496 (citing *Gomez v. Comerford*, 833 F.Supp. 702, 706 (N.D.Ill.1993); *Kohn v. Mucia*, 776 F.Supp. 348, 352 (N.D.Ill.1991)).

■ Plaintiffs argue that the number of potential members of the class demonstrates an impracticality of joinder that satisfies the numerosity requirement. Defendant McCormick has testified in deposition that he communicates with people to collect debts owed for medical care by filing suit against "approximately 100 to 120 people each year," in local courts scattered over sixteen counties within a hundred-mile radius of Columbus. Thus, Plaintiffs argue, numerosity and geographical dispersion make joinder of each putative class member impracticable, especially with regard to future members.

4. *See discussion infra* Part III.B.1.

Mr. McCormick contends that Plaintiffs received their letter because of a bona fide error in his collection processes. Defendant claims that he has two separate styles of collection letters: one related to business collection and another for individuals. Defendant admits that he erroneously issued a business collection letter to the Edwards family. He contends that this error was a single occurrence and does not constitute a pattern or practice. Defendant notes that Plaintiffs have failed to present any affidavits, testimony or other evidence of any sort establishing that illegal communications were sent more than one time. Moreover, Defendant argues, Plaintiffs have failed to show that the number of putative class members is so numerous that joinder would be impracticable—even if other individuals were identified, their joinder would pose no undue burden on the Court.

Plaintiffs here seek to satisfy the numerosity requirement by relying on speculation as to how many people *may* have received from Defendant collection letters that are similarly violative of the FDCPA. Mere supposition, like that offered by Plaintiffs here, is not enough to satisfy Rule 23(a)'s numerosity requirement. *Cwiak,* 186 F.R.D. at 496. Though Defendant has produced "approximately 100 to 120" public records per year of suits filed to collect debts owed to Hocking Valley, Plaintiffs have not been able to produce another member of the putative class.

Here, *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025 (6th Cir.1992), is instructive. In *Smith,* a case in which the defendant raised the bona fide error defense claiming that the communication was mailed erroneously, the court declined to accept the plaintiff's "conclusory allegations" that numerous consumers were involved simply because the letters were computer-generated. *Id.* at 1033. In the matter *sub judice,* the Plaintiffs' conclusory allegations of receipt of illegal letters by great numbers of individuals likewise are not enough to satisfy Rule 23(a)'s numerosity requirement. As the requirements of Rule 23(a) are conjunctive, *In re American Med. Sys.,* 75 F.3d at 1079, this shortcoming alone also is enough to deny certification to Plaintiffs' putative class.

## 2. Commonality

■ The commonality prerequisite requires there to be questions of law or fact common to the class. FED.R.CIV.P. 23(a)(2). "The commonality test 'is qualitative rather than quantitative, that is, there need only be a single issue common to all members of the class.'" *In re American Med. Sys.,* 75 F.3d at 1080 (quoting HERBERT NEWBERG ET AL., 1 NEWBERG ON CLASS ACTIONS § 3–10, at 3–50 (3d ed.1992)). As this Court has held previously, commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Day v. NLO, Inc.,* 144 F.R.D. 330, 333 (S.D.Ohio 1992) (quotation omitted). In FDCPA cases, "[w]here plaintiffs have received similar debt collection letters from the defendants' mailing as the basis of the lawsuit, courts have found common questions of law or fact sufficient to certify the class." *Labbate–D'Alauro v. GC Service Ltd. Partnership,* 168 F.R.D. 451, 456 (E.D.N.Y.1996); *see also Vines v. Sands,* 188 F.R.D. 302, 304 (N.D.Ill.1999) (stating that "[t]he commonality requirement is easily satisfied in this case, for the claims involve the same form letter sent by [the defendant collection agency] to each class member, and the same question of law under the FDCPA.").

■ Plaintiffs assert that there are common questions of law and fact as Defendant's debt collection techniques constitute a common practice or course of conduct that violates federal and state law. Plaintiffs allege that Defendant McCormick routinely employs collection practices that violate the law in: (1) pursuing collections against individuals for medical debts for which they are not legally responsible; (2) pursuing collections against individuals for medical debts in excess of their personal responsibility; and (3) failing to honor notice and collection prohibitions mandated by the FDCPA.

Defendant contends that the letter which was sent to the Edwards family was a result of one instance of inadvertent human error. He submits that there is absolutely no evidence that this error occurred with regard to a class of people. Moreover, Defendant avers, any liability on his part to additional

putative class members could not be established without individualized inquiry of each debtor, precluding Plaintiffs from claiming questions of law or fact common to the purported class.

Defendant's arguments here address numerosity, not commonality. Whether or not Defendant's practices violate the FDCPA is clearly a question that would be common to Plaintiffs' purported class, if Plaintiffs could show that such a class exists. If Plaintiffs could satisfy the remainder of Rule 23's requirements for maintaining a class action, commonality would not pose a bar to certification.

### 3. Typicality

■ Plaintiffs seeking to represent a class must present claims typical of that class. FED.R.CIV.P. 23(a)(3). A class representative's claims "must have the same essential characteristics as the claims of other members of the class." *In re VMS Securities Litig.*, 136 F.R.D. 466, 474 (N.D.Ill.1991). Thus, "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993).

■ Plaintiffs claim that typicality is satisfied so long as they raise the same legal claims for themselves as for the class, so that pursuing their own claims will also advance the interests and the claims of the absent members of the class. Plaintiffs aver that they maintain exactly the same causes of action on their own behalf as they do on behalf of the putative class. The proofs, Plaintiffs allege, that are required for their own case to prevail are those necessary for the putative class to prevail. Plaintiffs assert that, on their behalf and on the class's behalf, all interests are advanced by proving Defendant McCormick has a practice of violating the FDCPA by taking collection on medical debts against persons who are not legally liable for those debts. Thus, Plaintiffs argue that they have satisfied the typicality requirements.

Plaintiffs arguments on typicality require the Court to infer the existence of other class members who were harmed in the same manner as were Plaintiffs. In the face of Defendant's unrefuted testimonial evidence that the letter sent to Plaintiffs was a result of a unique human error, that inference is one the Court cannot make. Plaintiffs cannot satisfy the typicality requirement of Rule 23 by comparing their claims to the hypothesized claims of unsubstantiated putative class members. Again, the conjunctive nature of Rule 23(a) requirements permits this Court to deny class certification on this basis alone.

### 4. Fair and Adequate Representation

■ In a class action, the representative plaintiffs must "fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). The Sixth Circuit has set forth two criteria for determining whether the representation of the class will be adequate: (1) the representatives must have common interests with the unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525. Furthermore, a representative must be a member of the class he purports to represent. *East Texas Motor Freight Sys., Inc.*, 431 U.S. at 403, 97 S.Ct. 1891.

Whether Plaintiffs in this case do indeed have common interests with the unnamed members of the class cannot be evaluated absent a showing on the part of Plaintiffs of who, generally, comprises the rest of the putative class. Any holding on the adequate representation prong of Rule 23(a) would, therefore, be based purely on speculation; this Court declines to do so.

### IV. CONCLUSION

As Plaintiffs have failed to adequately define their putative class, and as they cannot satisfy Rule 23(a)'s numerosity or typicality requirements, Plaintiffs' Motion for Class Certification is **DENIED.**

**IT IS SO ORDERED.**