JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants, Brandy L. Ritt, Kathleen Soppelsa, and Denise Reeves ("plaintiffs"), appeal the trial court's denial of their request for class certification under Civ.R. 23. For the reasons that follow, we reverse the decision of the trial court.
 {¶ 2} Plaintiffs allege that defendants, Billy Blanks,[1]
individually, Billy Blanks' World Karate Center, Inc. ("Karate Center"), and BG Star Productions, Inc.,[2] as well as defendant-appellee, Memberworks, Inc. and its related entities[3] ("MWI"), NCP
 {¶ 3} Marketing Group, Inc. ("NCP"),[4] West Corporaton ("West"),[5] (collectively "defendants") engaged in a telemarketing scheme meant to defraud purchasers of the TAE-BO fitness videotape and/or other TAE-BO products.
 {¶ 4} According to plaintiffs, the telemarketing scheme was preceded by a national television campaign in which, either through infomercials or other television mediums, TAE-BO videotapes and related products were offered for sale to the public. The "1-800" number viewers were told to call was operated by West. Callers wishing to purchase the video or other TAE-BO products would have to give their personal credit/debit card information to one of West's employees at the other end of the telephone line.
 {¶ 5} Immediately upon obtaining the callers' financial information, West's telemarketer conducts what is referred to in the industry as an "upsell." The upsell in this case occurs when the telemarketer reads, usually by rote, a script in which a free trial membership is offered along with a membership kit to follow in the mail. In concert with MWI and NCP, West instructs its employees to make what it knows is the fraudulent upsell only after callers have provided their financial information. Supposedly, once the caller says "yes" to receiving the kit in the mail, the telemarketer has what it needs and the call ends. The representative plaintiffs in this case never received anything memorializing the offer for a free trial membership or anything informing them of any fees or other details about the membership.
 {¶ 6} As for the kit that callers were supposed to receive, plaintiffs acknowledge that defendants sent something that looks like junk mail, was allegedly mailed at bulk rate, and supposedly contains discount coupons for various retailers around the country. Plaintiffs, however, claim that the kit was intentionally meant to look like junk mail so that it is immediately discarded without being opened. As a result of its appearance, virtually no one would actually use the discount coupons. Plaintiffs claim they never received this membership kit. (Plaintiffs' third amended complaint.)
 {¶ 7} After the caller agrees to receiving the kit, NCP provides MWI with the credit/debit card information obtained from each purchaser of a TAE-BO tape/product. That information is then used by MWI to bill purchasers for membership and annual renewal fees in amounts ranging from $60 to $100 annually.
 {¶ 8} According to plaintiffs, defendants' fraudulent scheme began in early 1998 with some purchasers still being billed an annual self-renewing membership fee in 2001. In their complaint filed against defendants in November 2000, plaintiffs allege, among other things, fraud, civil conspiracy, and violations of the Ohio Deceptive Trade Practices Act and the Consumer Sales Practices Act. A third amended complaint was filed in July 2001. Answers were filed by MWI, NCP, and West. Only West, however, asserted the defense of arbitration.
 {¶ 9} Plaintiffs filed their motion for class certification in July 2001. In that motion, plaintiffs described the class they sought to have certified as "[a]ll persons in the United States (of such States as may be certified by the court), who were charged unauthorized fees (or similar unauthorized charges) on their credit or debit card accounts in connection with enrollment in an MWI membership program."
 {¶ 10} Without conducting a hearing, the trial court denied plaintiff's motion on the basis that plaintiffs' description of the class was allegedly ambiguous. The court explained the effect of such an ambiguity: "If a court must come to numerous conclusions regarding class membership or adjudicate the underlying issues on behalf of each class member, then a proper class cannot be defined concisely." Journal entry and opinion at p. 6, citing Edwards v. McCormick (2000), 196 F.R.D. 487,493. In reaching this conclusion, the court also determined that certification was not warranted because the arbitration clause contained in MWI's membership agreement would require individualized inquiry of each potential class member about whether they had agreed to arbitrate.
After the court denied plaintiffs' motion for class certification, plaintiffs filed a second motion requesting oral argument and that the court's order be vacated. That motion was never ruled upon. Plaintiffs timely filed this appeal and assert one assignment of error for our review.
The Trial Court Abused Its Discretion By Denying Plaintiffs' Motion For Class Certification. (Journal Entry And Opinion, 2/6/02.)
 {¶ 11} First, plaintiffs argue the court erred in concluding they did not sufficiently identify the members of their proposed class pursuant to Civ.R. 23. Civ.R. 23(C)(1) provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."
 {¶ 12} A plaintiff must prove by a preponderance of evidence that class certification is appropriate. State ex. rel Ogan v. Teater (1978),54 Ohio St.2d 235, 375 N.E.2d 1233. The plaintiff must make seven affirmative showings before a case will be certified as a class action. See Warner v. Waste Mgt., Inc. (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, at syllabus.
 {¶ 13} In deciding whether a class action can be maintained, "[a] trial judge has broad discretion * * * and that determination will not be disturbed absent a showing of an abuse of discretion." Baughman v. StateFarm Mut. Auto. Ins. Co. (2000), 88 Ohio St.3d 480, 727 N.E.2d 1265, quoting Marks v. C.P. Chem. Co., Inc. (1987), 31 Ohio St.3d 200,509 N.E.2d 1249, at the syllabus.
 {¶ 14} Civ.R. 23(A)[6] and (B), list the five specific requirements required for certification as a class action: "the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."
 {¶ 15} Section (B) lists additional prerequisites:
"(1) the prosecution of separate actions by or against individual members of the class would create a risk of
"(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
"(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
"(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
"(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
"(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
"(d) the difficulties likely to be encountered in the management of a class action."
 {¶ 16} In addition to these explicit requirements, Civ.R. 23 implicitly requires a trial court to make one more finding: either that an identifiable and unambiguous class exists or that the class representatives are members of the class.[7] Warner, supra at 96. "No one factor under either Civ.R. 23(A) or (B) should be overemphasized to defeat the basic purpose behind Civ.R. 23." Ojalvo v. Bd. of Trustees ofOhio State Univ. (1984), 12 Ohio St.3d 230, 235, 466 N.E.2d 875, 879.
 {¶ 17} In the case at bar, the trial court never provided an analysis of any of Civ.R. 23(A)'s requirements. Instead, the trial court went directly to Civ.R. 23(B)(3)'s implicit requirement that the plaintiffs have an "identifiable class."[8] The court denied plaintiffs' motion for class certification because it found their proposed class was ambiguous and would require individualized inquiry of each potential member regarding the issue of arbitration.
 {¶ 18} We first address the trial court's treatment of plaintiffs' proposed class definition. In Warner v. Waste Mgmt., Inc. (1988),36 Ohio St.3d 91, 521 N.E.2d 1091, the Ohio Supreme Court addressed a similar situation in which the trial judge certified a class consisting of those people who have `lived, worked, resided, or owned real property within a five-mile radius of the Waste Management * * * site.' In their second amended complaint, however, the plaintiffs sought to represent only those citizens `who lived or owned real property within a five (5) mile radius of the * * * site.' As stated, the judge sua sponte enlarged the class to include all people who worked within five miles of the site.
We think it is clear that a class consisting of all people who have ever worked within five miles of a specific site is unidentifiable. Such a class would include all transients who have, for one reason or another, `worked' within the defined zone. In this respect, the class certified is not readily identifiable. We hold that the trial court abused its discretion by sua sponte including within the class all people who have ever worked within five miles of the facility. Therefore, this action must proceed in a modified form. That part of the appellate court's decision that is inconsistent with this holding is reversed. Emphasis added.
 {¶ 19} Warner not only permits but encourages the trial court to modify what is otherwise an unidentifiable class. See Baughman, supra, at 484 (the Supreme Court sua sponte allowed appellants to modify the class they had certified more than two years earlier in the trial court).
 {¶ 20} In the case at bar, we agree with defendants that plaintiffs' original class was too ambiguous to constitute an identifiable class under Civ.R. 23. Under Warner, however, the trial court should have modified the class description so that all plaintiffs were sufficiently identifiable. We reach this conclusion especially in light of the fact that before the trial court ruled on their motion, plaintiffs did try to clarify the class description as "[c]ustomers of NCP throughout the nation, who have been enrolled in and have been charged for an MWI membership program and who have never contacted MWI to use membership benefits." The trial court, however, failed to even consider the proposed modification because it had been submitted without leave of court.
 {¶ 21} Even the proposed modification is still too broad because it does not limit the class to those persons who purchased TAE-BO products via an advertised "1-800" number within a certain time frame, etc. Nonetheless, it could have been sufficiently tightened by the trial court in order to qualify as an identifiable class under the rule. The failure of the trial court to modify the class itself or to allow plaintiffs to modify it constitutes an abuse of its discretion and thus a reversible error. Because the proposed class could be made more identifiable with little effort, we do not find applicable to the facts here this court's recent decision in Barber v. Meister ProductionServices, Cuyahoga App. No. 81553, 2003-Ohio-1520. Unlike the situation here, the proposed class in Meister included persons who had not and may not ever be identifiable, leaving the proposed class "overly broad and ambiguous as a matter of law." Id. At ¶ 34. In the case before this court, the proposed class is already closed and identifiable.
 {¶ 22} Plaintiffs further argue that the trial court erred in denying their motion for class certification because of the arbitration clause contained in MWI's membership agreement. Plaintiffs argue MWI has waived the arbitration defense. We agree. As noted by this court in Millsv. Jaguar-Cleveland Motors, Inc. (1980), 69 Ohio App.2d 111,430 N.E.2d 965: "'* * * either party to a contract of arbitration may waive it. * * *' And a plaintiff's waiver may be effected by filing suit. When the opposite party, the potential defendant, is confronted with a filed lawsuit, the right to arbitrate can be saved by seeking enforcement of the arbitration clause. This is done under R.C. 2711.02 by application to stay the legal proceedings pending the arbitration. Failure to move for a stay, coupled with responsive pleadings, will constitute a defendant's waiver. Accordingly, when the plaintiff in the present case filed his complaint in United States District Court, he waived arbitration. When the defendant filed its answer in that suit withoutdemanding arbitration, it, in effect, agreed to the waiver." Emphasis added. Mills, supra, at 113, 430 N.E.2d at 967. In the case at bar, MWI filed its answer to plaintiffs' third amended complaint on August 2, 2001 and never asserted the defense of arbitration, nor did it ever affirmatively move for a stay of proceedings pending arbitration. UnderMills, MWI has waived arbitration as a defense in this case. Nonetheless, because West did assert arbitration as a defense in its answer, we address the trial court's denial of plaintiffs' motion for class certification on that issue.
 {¶ 23} The trial court agreed with defendants that the presence of the arbitration provision would require inquiry of each and every potential class member in order to determine if they agreed to arbitrate. We reject this argument because plaintiffs clearly assert that the purported membership agreement, which includes the arbitration clause, was obtained through fraud. Because plaintiffs' claims are grounded in common law fraud there is no need to question every class member about their consent to arbitrate.
 {¶ 24} "[A]rbitration is a matter of contract and, in spite of the strong policy in its favor, a party cannot be compelled to arbitrate a dispute which he has not agreed to submit [to arbitration]." Giltner v.Mitchell, 2002 Ohio 5771, 2002 Ohio App. LEXIS 5630, quoting TeramarCorp. v. Rodier Corp. (1987), 40 Ohio App.3d 39, 40, 531 N.E.2d 721;Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 ("[T]o constitute a valid contract, there must be a meeting of the minds * * * an offer on the one side and an acceptance on the other").
 {¶ 25} In Krist v. Curtis (May 18, 2000), Cuyahoga App. No. 76074, 2000 Ohio App. LEXIS 2093, this court explained the effect a claim of fraud can have on a defendant's insistence that a plaintiff is contractually obligated to arbitrate. "[I]t has been held that where the allegation is that of fraud in the factum, i.e., ineffective assent to the contract, the intent to arbitrate will not be presumed." Id., quotingRoberts v. Bank of Am. NT SA (1995), 107 Ohio App.3d 301, 305,668 N.E.2d 942.
 {¶ 26} The Roberts Court noted that under Ohio law, fraud in the factum is defined as an "intentional act or misrepresentation of one party [which] precludes a meeting of the minds concerning the nature or character of the purported agreement. The decisive factor is whether the allegation is that of fraud in the factum which attacks the effectiveness of the assent." Krist at *4 and *5, citing Haller v. Borror Corp.
(1990), 50 Ohio St.3d 10, 13, 552 N.E.2d 207.
 {¶ 27} In the case at bar, plaintiffs claim they never received and, therefore, never agreed to any of the terms of the membership agreement, including the arbitration provision. Plaintiffs further argue that MWI intentionally avoided providing them with any such written agreements so that the fee charges would simply appear on their credit/debit statements, without explanation.
 {¶ 28} On the other hand, MWI maintains that the membership agreement containing the arbitration clause was sent to purchasers of the TAE-BO videotape and that this agreement fully explained the terms and conditions of the membership, including the arbitration requirement. Absent from the record, however, is any evidence that the three named representative plaintiffs actually received such an agreement.
 {¶ 29} From the record it is obvious that the parties hotly dispute the existence of any contract, let alone an arbitration provision contained therein. Given the nature of plaintiffs' claims, namely, that they were never given any details about the membership and were intentionally not told about any fees, there is a significant discrepancy about whether there was a meeting of the minds between the plaintiffs and MWI about the agreement and its arbitration clause.
 {¶ 30} As a matter of law, we conclude that plaintiffs' claims arise from facts alleging fraud in the factum, which if proven, would make the membership agreement and its arbitration provision void ab initio. Under these facts there is no need to speak to individual class members about the arbitration clause. As such, the trial court abused its discretion by relying on MWI'S arbitration argument as part of its reason to deny plaintiffs' motion for class certification.
 {¶ 31} For the foregoing reasons, we conclude that the trial court abused its discretion in determining that plaintiffs did not have an identifiable class pursuant to Civ.R. 23(B)(3).
 {¶ 32} Nonetheless, defendants collectively argue that class membership cannot be determined without each potential member being asked whether the member authorized the charges and also agreed to arbitrate. Defendants claim that inquiry into this issue reaches the merits of the case and thus is improper prior to certification under Civ.R. 23. We reject this argument because it is unnecessary for the trial court to delve into the authorization issue at all. In order to satisfy the rule's requirements, plaintiffs need only show that (1) they contacted defendants by telephone and purchased the TAE-BO video, (2) they were asked to take advantage of the risk free membership program, and (3) monetary charges beyond the price of what they purchased later appeared on their credit/debit card billing statements from MWI. Because of the manner in which plaintiffs claim the nationwide scheme was perpetrated, even if persons "authorized" defendants to sign them up for the free membership, that authorization would be a nullity if plaintiffs prove the fraudulent nature of the telemarketing plan at its inception.
 {¶ 33} The fact is, with or without authorization, consumers who stayed on the telephone line long enough to receive the entire scripted pitch would not have known the ramifications of what they were agreeing to once the upsell had been pitched to them and they said "yes" to receiving a membership kit. Like the arbitration issue, "authorization" under this set of facts is immaterial if plaintiffs prevail in proving fraud. The same is true of course on the "choice of laws" argument advanced by defendants. The type of fraud alleged here would make any choice of law provision in the membership agreement void from its inception. Thus the agreement is unenforceable.
 {¶ 34} Finally, we address a significant procedural error in the proceedings below. Though not argued here on appeal, we note from the trial court's docket that plaintiffs and NCP requested oral argument on the class certification issue.
 {¶ 35} Generally, an evidentiary hearing is unnecessary for a trial court to be able to determine whether class certification is warranted. However, in those cases where the facts related to class issues are disputed, a hearing should be conducted. "[W]here * * * the pleadings themselves do not conclusively show whether the Rule 23 requirements are met, the parties must be afforded the opportunity to discover and present documentary evidence on the issue." Warner, supra at 99, citing Walker v. World Tire Corp. (8th Cir., 1977), 563 F.2d 918,921.
 {¶ 36} In Warner, the Supreme Court of Ohio stated: "Typically, there is a hearing, accompanied by extensive documentation, depositions, admissions, interrogatories, affidavits, and oral testimony. It is from this hearing that the court must find, by a preponderance of the evidence, that all the Rule 23 requirements are met."[9] Warner, supra, at 94.
 {¶ 37} In the case at bar, plaintiffs moved the court twice for oral argument. Plaintiffs' first motion was denied and their second motion was never ruled on. The second motion is, therefore, presumed to have been denied on or about March 7, 2002 when plaintiffs filed their notice of appeal. State ex rel. V Cos. v. Marshall (1998),81 Ohio St.3d 467, 692 N.E.2d 198. NCP and West also requested oral argument on the class certification issue. Those requests were implicitly denied as well by the trial court on March 7, 2002.
 {¶ 38} Even though none of the motions specifically requested an evidentiary hearing, we conclude the trial court abused its discretion in failing to conduct such a hearing in this case, because the facts relating to class certification are clearly disputed.
 {¶ 39} Accordingly, we find that trial court abused its discretion in denying plaintiffs' motion for class certification. Plaintiffs' assignment of error is sustained and this matter reversed and remanded to the trial court for proceedings consistent with this opinion.
This cause is reversed and remanded.
TIMOTHY E. MCMONAGLE, A.J., CONCURS; JAMES J. SWEENEY, J., CONCURS INJUDGMENT ONLY.
[1] Mr. Billy Blanks is a fitness expert who is a celebrity on television because of his TAE-BO fitness programs. Mr. Blanks is the principal of Billy Blanks' World Karate Center, Inc. and BG Star Productions, Inc. Mr. Blanks and his fitness regimens are the subject of the TAE-BO videotapes.
[2] The docket in this case shows failure of service on BG Star Productions. It also indicates that though Billy Blanks, individually, and Billy Blanks' World Karate Center, Inc., filed motions joining in another defendant's motion to deny class certification, neither ever filed answers to plaintiffs' third amended complaint. We also note that Mr. Blanks, the World Karate Center, and BG Star Productions, Inc. are not appellees in this appeal.
[3] MWI Essentials, MWI Leisure Advantage, MWI Home Garden, and MWI Connections. It is alleged that MWI is the billing entity that appeared on each customer's credit/debit card billing statement. It is also alleged that MWI, in concert with NCP, engaged in the national television marketing campaign in which the TAE-BO videotapes were offered for sale to the general public.
[4] NCP, as the owner of TAE-BO property, created and marketed the TAE-BO videotapes in concert with MWI.
[5] West actually operates the telephone banks through which people purchase the TAE-BO tapes/products and are offered the free membership.
[6] Under section (A) of the rule, four prerequisites must be satisfied and the failure to satisfy any one of the four will result in the denial of certification. Section (B), however, lists alternatives.
[7] It must be shown that the action comes within at least one of three types of class actions described in Civ.R. 23(B).
[8] The court never addressed whether plaintiffs satisfied any of the other provisions of Civ.R. 23(B), though this issue was briefed by plaintiffs, nor did it conduct any analysis under Civ.R. 23(A).
[9] The Court also noted "[w]e recognize a trial court is not required to hold an evidentiary hearing for all such cases. It is rare, however, that the pleadings in a class certification action will be so clear that a trial judge may find, by a preponderance of the evidence, that certification is or is not proper." Warner at 98.